# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kinsale Insurance Company

## DEFENDANTS

Scrap Enterprises Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Benjamin Greenfield, Esquire
Krishen R. Jalali, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
2001 Market Street, Suite 3100
Philadelphia, PA  19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
9 U.S.C. Sec. 9

Brief description of cause:
Enforcement of a binding arbitration award issued by the American Arbitration Association

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
195,856.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*        JUDGE _____        DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Feb 5, 2026 | /s/Krishen R. Jalali |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY, | CIVIL ACTION |
| Movant, | NO.: |
| v. | |
| SCRAP ENTERPRISES INC. | |
| Respondent. | |

## <u>ORDER</u>

AND NOW, this _____ day of February, 2026, upon consideration of Kinsale Insurance Company's Motion to Confirm Arbitration Award and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED.

IT IS HEREBY ORDERED that Award of Arbitrator dated August 25, 2025 in the amount of $195,856.00 is CONFIRMED.

It is FURTHER ORDERED that a judgement be entered immediately in the amount of $195,856.00 in favor of Kinsale Insurance Company and against Scrap Enterprises Inc.

BY THE COURT:

_____
                                          J.

322843344v.2

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY, | CIVIL ACTION |
| Movant, | NO.: |
| v. | |
| SCRAP ENTERPRISES INC. | |
| Respondent. | |

**KINSALE INSURANCE COMPANY'S**
**MOTION TO CONFIRM ARBITRATION AWARD**

Kinsale Insurance Company ("Movant"), by and through its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby moves this Court to confirm the enclosed arbitration award as a judgment against Scrap Enterprises Inc. ("Respondent") and, in support thereof, avers as follows:

1.      Movant is entitled to $193,101.00 in unpaid general liability insurance premium from Respondent, as set forth in greater detail in the Affidavit of Jessica Carroll.

2.      A true and correct copy of the Affidavit of Jessica Carroll is attached hereto, made a part hereof and marked as **Exhibit A**.

3.      Movant recovered an Award of Arbitrator against Respondent on August 25, 2025 for the principal amount of $193,101.00, together with $2,755.00 in combined American Arbitration Association ("AAA") administrative fees and expenses and compensation for the Arbitrator, for a total of $195,856.00 (the "Arbitration Award").

4.      A true and correct copy of the Arbitration Award is attached hereto, made a part hereof and marked as **Exhibit B**.

5.      Movant is the owner and holder of the Arbitration Award which still remains in full

322843344v.2

force and effect.

6. Demands have been made upon Respondent for payment, which demands have been refused.

7. Pursuant to the Federal Arbitration Act, Movant is entitled to apply to the Court for an order confirming the award into a judgment. *9 U.S.C. §9.*

8. The Arbitration Award remains due and owing as of the date of commencing this action.

 **WHEREFORE**, Movant, Kinsale Insurance Company, requests that the Court grant its Motion and enter an Order in the proposed form attached hereto.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

**02/05/2026**
Date: _____

**/s/Krishen R. Jalali**
_____
Benjamin Greenfield, Esquire
Krishen R. Jalali, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215-627-6900 (Main)
215-627-2665 (Fax)
Benjamin.Greenfield@wilsonelser.com
Krishen.Jalali@wilsonelser.com
*Attorneys for Movant,*
*Kinsale Insurance Company*

322843344v.2

# EXHIBIT A
## [Affidavit of Jessica Carroll]

322843344v.2

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY, | CIVIL ACTION |
| Movant, | NO.: |
| v. | |
| SCRAP ENTERPRISES INC. | |
| Respondent. | |

## AFFIDAVIT OF JESSICA CARROLL

Understanding that false statements herein are made subject to penalty under 18 U.S.C. §1001, relating to unsworn falsifications to authorities, I, Jessica Carroll, verify that:

1.    I am employed by Kinsale Insurance Company ("Movant") as in the position of Arbitration Specialist.

2.    I have personal knowledge of the relevant facts and documents set forth in this affidavit and otherwise referred to in this action pursuant to my review and/or handling of the associated files as well as in a custodian of records capacity.

3.    At the request of Scrap Enterprises Inc. ("Respondent"), Movant issued to Respondent certain commercial general liability insurance coverage under a certain Commercial General Liability Policy No. 0100176944-0 (the "Policy"), with an effective date of January 26, 2022 and an expiration date of January 26, 2023 (the "Policy Term").

4.    A true and correct copy of the Policy is attached hereto, made a part hereof and marked as **Exhibit A**.

5.    The total Payable at Inception for the Policy at the time of the issuance of the Policy was calculated to be $25,000.00 (Deposit Premium) plus a $500 non-refundable company fee. This

327702814v.2

total was based upon information submitted to Movant by and/or on behalf of Respondent regarding the estimated sales of the Respondent for the upcoming policy term.

6.      As of current date, Respondent has paid a total sum of $25,500.00 against the Policy, which includes the $25,000 Deposit Premium and the $500 non-refundable company fee.

7.      The Policy provides at Endorsement CAS4029 – AMENDMENT – CONDITIONS – PREMIUM AUDIT, in pertinent part, that the actual earned premium may be computed at the close of the policy period, or upon cancellation (if applicable), through an audit of the insured's books and records .

8.      In accordance and consistent with these terms, following the termination of the Policy Term, Movant completed a remote physical audit of the Policy (the "Policy Audit") with the assistance of a third party auditor.

9.      Movant determined based on the results of this audit that additional earned premium was owed by Respondent under the Policy, and issued a final premium audit endorsement for the Policy (the "Audit Endorsement") on February 3, 2023, indicating a total earned premium of $218,101.00 which total is inclusive of, and incorporates the "Deposit Premium" of $25,000 made by the Respondent at policy inception.

10.      A true and correct copy of the Final Premium Audit Endorsement is attached hereto, made a part hereof and marked as **Exhibit B**.

11.      The difference between the $218,101.00 final total earned premium for the Policy and the Policy Term and the previous payments of $25,000.00 by Respondent is $193,101.00. This total represents the Audit (Additional) Premium, or Net Amount of Change in Premium still owed by the Respondent, as set forth in the Final Premium Audit Endorsement as well as the invoice generated to Respondent under date of March 27,2023 (the "Final Premium Audit Invoice").

327702814v.2

12.   A true and correct copy of the Final Premium Audit Invoice is attached hereto, made a part hereof and marked as **Exhibit C**.

13.   Under date of October 30, 2024, Movant sent a letter to Respondent requesting payment of the $193,101.00 earned premium balance and advising that, if payment was not made within five (5) business days, Movant would submit the matter to binding arbitration.

14.   A true and correct copy of the October 30, 2024 correspondence is attached hereto, made a part hereof and marked as **Exhibit D**.

15.   The Policy states at Form CAS2007 – COMMON CONDITIONS – CASUALTY, in pertinent part, as follows:

> **BINDING ARBITRATION**
>
> All disputes under this Policy shall be subject to binding arbitration as follows:
> …
> b.   All disputes regarding payment(s) owed under this Policy for any deductible or premium, including but not limited to any audit premium, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with AAA Expedited Procedures. This arbitration shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

16.   On December 16, 2024, Movant initiated binding arbitration on the matter of the unpaid $193,101.00 earned premium balance with the American Arbitration Association ("AAA"). Movant notified Respondent of same on December 16, 2024.

17.   A true and correct copy of the December 16, 2024 correspondence is attached hereto, made a part hereof and marked as **Exhibit E**.

18.   Movant waived oral hearings in this matter and submitted documentation for AAA's assigned Arbitrator to review. Upon information and belief, Respondent failed to submit any documents to AAA.

19.   Under date of August 25, 2025, the Arbitrator completed his review of all submitted

327702814v.2

documentation and entered an award for Movant in the principal amount of $193,101.00, together with $2,755.00 in combined administrative fees and expenses and compensation for the Arbitrator, for a total sum of $195,856.00 (the "Arbitration Award").

20.    A true and correct copy of the Arbitration Award is attached hereto, made a part hereof and marked as **Exhibit F**.

21.    Respondent has not paid any amounts against the Arbitration Award as of current date.

I affirm that the foregoing statements made by me are true.  I am aware that, if any of the foregoing statements made by me are false, I am subject to punishment.

Date: ___1/20/2026___

_____
Jessica Carroll
Arbitration Specialist
Kinsale Insurance Company

327702814v.2

# EXHIBIT A
## [Policy]

322843344v.2

**KINSALE INSURANCE COMPANY**

2035 Maywill Street, Suite 100

Richmond, VA 23230

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

Policy Number:        0100176944-0

Producer Number:      15708

Name and Address:     CRC Commercial Solutions - Binding - Scarborough, ME

25 Spring Street, Suite 100

Scarborough, ME 04074

| | |
|---|---|
| NAMED INSURED: | Scrap Enterprises Inc<br>dba Trion Equipment Sales |
| MAILING ADDRESS: | 105 S Keyser Ave<br>Old Forge, PA 18518 |
| POLICY PERIOD: | FROM 01/26/2022 TO 01/26/2023 at 12:01 AM at the address of the named insured as shown above. |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
|---|---:|---|
| Each Occurrence Limit | $1,000,000 | Any one occurrence |
| Damages to Premises Rented to You Limit | $100,000 | Any one premises |
| Medical Expense Limit | Excluded | Any one person |
| Personal & Advertising Injury Limit | $1,000,000 | Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products / Completed Operations Aggregate Limit | Excluded | |

| DESCRIPTION OF BUSINESS | |
|---|---|
| DESCRIPTION OF OPERATIONS: | Secondhand Machinery & Equipment Dismantling and Sales - Products/Completed Operations Excluded |
| BUSINESS TYPE: | Corporation |

| CLASSIFICATION AND PREMIUM | | | | | |
|---|---|---|---|---|---|
| CLASS CODE | CLASS DESCRIPTION | BASIS OF PREMIUM | EXPOSURE | RATE | PREMIUM |
| 16881.01 | Secondhand or Salvage Dealers and Distributors - Products/ Completed Operations Excluded RATED AS Secondhand or Salvage Dealers and Distributors | per $1,000 Gross Sales | 1,000,000 | 25.0000 | $25,000 |

| | |
|---|---:|
| TOTAL PREMIUM (DEPOSIT PREMIUM): | $25,000 |
| COMPANY FEE: | $500 |
| **TOTAL PAYABLE AT INCEPTION:** | **$25,500** |

| POLICY SUBJECT TO AUDIT: | Y | AUDIT PERIOD: | Annual |
|---|---|---|---|

| ENDORSEMENTS |
|---|
| Refer to ADF4001, SCHEDULE OF FORMS |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULED NAMED INSURED ENDORSEMENT

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | *Return Premium:*<br>$0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

### SCHEDULE

| Name Insured(s) |
|---|
| Scrap Enterprises Inc dba Trion Equipment Sales |

The entities shown in the Schedule above qualify as Named Insureds under this Policy.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

## NOTICE—WHERE TO REPORT A CLAIM

It is important that losses, claims or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to the Claims Department at Kinsale Insurance Company.  Reporting losses, claims or incidents to an insurance agent or broker is not notice to the Kinsale Insurance Company Claims Department.  Failure to report directly to Kinsale Insurance Company's Claims Department may jeopardize coverage under the Policy.  The Claims Department can be contacted easily and quickly by e-mail, fax or U.S. mail.

**By E-mail:**
Newclaimnotices@kinsaleins.com

**By FAX:**
1-804-482-2762, Attention Claims Department

or

**By Mail:**
Claims Department
Kinsale Insurance Company
P. O. Box 17008
Richmond, Virginia 23226

**Street Address:**
2035 Maywill Street, Suite 100
Richmond, Virginia 23230

# SCHEDULE OF FORMS

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | | Return Premium: $0 |

CAS1000-0521 - Commercial General Liability Declarations

CAS2034-0621 - Scheduled Named Insured Endorsement

ADF9013-0419 - Notice - Where To Report A Claim

ADF4001-0110 - Schedule of Forms

CG0001-0413 - Commercial General Liability Coverage Form

CAS2004-0110 - Deductible Endorsement

CAS2007-0220 - Common Conditions - Casualty

ADF4002-1120 - Basis of Premium

CAS4018-1121 - Additional Policy Provisions - Premium

CAS4029-0721 - Amendment - Conditions - Premium Audit

ADF3003-0519 - Exclusion - Absolute Pollution and Pollution Related Liability

ADF3010-0110 - Exclusion- Nuclear, Biological or Chemical Materials

ADF3011-0115 - Exclusion of Other Acts of Terrorism Committed Outside the United States; Exclusion of Punitive Damages Related to a Certified Act of Terrorism; Cap on Losses from Certified Acts of Terrorism

CAS3009-0110 - Exclusion-Medical Payments

CAS3011-0220 - Exclusion - New Entities (Commercial General Liability)

CAS3017-0110 - Exclusion- Absolute Auto, Aircraft and Watercraft

CAS3040-1120 - Amended Exclusion - Employer's Liability

CAS3043-0621 - Additional Policy Exclusions

CAS3056-1118 - Exclusion - All Construction

CAS3097-0220 - Exclusion - Intellectual Property

CAS3098-1120 - Exclusion - Named Insured vs. Named Insured

CAS3103-0718 - Exclusions - Eviction and Failure to Maintain

CAS3105-0321 - Absolute Exclusion - Motorized Vehicles

CAS3108-0420 - Amended Exclusion - Recording and Distribution of Material or Information- General Liability

CAS3124-0616 - Exclusion - Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information

CAS3125-0616 - Exclusion - Fire or Fire-Related Injury or Damage

CAS3140-0320 - Exclusion - Pathogen and Related Hazards

CAS3181-0621 - Absolute Exclusion - Injury To Independent Contractors Or Subcontractors

CG2104-1185 - Exclusion- Products/Completed Operations Hazard

CAS5015-0420 - Additional Insured as Required by Written Contract - Excluding Products/Completed Operations

CAS5016-0420 - Additional Insured As Required By Written Contract - Mortgagee, Assignee, or Receiver

CAS5017-0420 - Additional Insured As Required By Written Contract - Managers or Lessors of Premises

CAS5018-0420 - Additional Insured- State or Governmental Agency or Subdivision or Political Subdivision Permits - Blanket

CG2034-1219 - Additional Insured - Lessor of Leased Equipment - Automatic Status When Required in Lease Agreement with You

ADF9010-0321 - Notice of Terrorism Insurance Coverage

IL0021-0908 - Nuclear Energy Liability Exclusion Endorsement (Broad Form)

IL0985-1220 - Disclosure Pursuant to Terrorism Risk Insurance Act

ADF9004-0110 - Signature Endorsement

ADF9009-0110 - U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders

ADF9026-0110 - Pennsylvania Changes-Cancellation and Non-Renewal

ADF4001 0110

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012     **CG 00 01 04 13**

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

                 © Insurance Services Office, Inc., 2012

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

     © Insurance Services Office, Inc., 2012     CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

       © Insurance Services Office, Inc., 2012       CG 00 01 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | | Return Premium: $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

### SCHEDULE

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE - PER CLAIM | AMOUNT AND BASIS OF DEDUCTIBLE - PER OCCURRENCE |
|---|---|---|
| Bodily Injury Liability | | |
| OR | | |
| Property Damage Liability | | |
| OR | | |
| Personal & Advertising Injury | | |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, combined | | $10,000 |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" or "personal and advertising injury" however caused):

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury, or any other coverages provided by this policy to pay damages on your behalf, applies only to the amount of damages in excess of any deductible amount(s) stated in the Schedule above as applicable to such coverages. The deductible amount(s) stated above will include all loss payments, adjusting, investigative and legal fees and costs and all other direct costs related to the investigation, defense and settlement of a claim or suit, regardless of whether or not any loss payment is made.

**B.** We may select a deductible amount on either a per claim or a per "occurrence" basis. Our selected deductible applies to the Coverage and to the Basis of the Deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:
**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";
**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";
**c.** Under Personal and Advertising Injury Liability, to all damages sustained by any one person or organization because of "personal and advertising injury liability"; or
**d.** Under Bodily Injury Liability and/or Property Damage Liability Coverage and/or Personal and Advertising Injury Liability, combined, to all damages, injury and medical expenses sustained by any one person or organization as the result of any one "occurrence" or offense.

CAS2004 0110                                                                                   Page 1 of 2

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a per "occurrence" basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage";

**c.** Under Personal and Advertising Injury Liability, to all damages because of "personal and advertising injury liability"; or

**d.** Under Bodily Injury Liability and/or Property Damage Liability Coverage and/or Personal and Advertising Injury Liability, combined, to all damages, injury and medical expenses

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or "offense".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or the entire deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON CONDITIONS - CASUALTY

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

**CANCELLATION**
a.  The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.
b.  We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
    1)  Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium; or
    2)  Thirty (30) days before the effective date of cancellation if we cancel for any other reason.
c.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.
d.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.
e.  If this Policy is cancelled, we will send the first Named Insured any refund due subject to the minimum earned premium provisions of the Policy.  If we cancel for reasons other than non-payment of premium, the refund will be pro rata.  If we cancel due to non-payment of premium or if the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**NON-RENEWAL**—the When We Do Not Renew Condition of the Policy is deleted and replaced with the following:
a.  If we elect not to renew this Policy, we shall mail written notice to the first Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the policy period.
b.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**CHANGES**
This Policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**TERMS, CONDITIONS AND PREMIUMS**
The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.  On each renewal, continuation or anniversary of the effective date of the Policy or on an annual basis, the Company will determine the rate and premium and may amend the terms and conditions of the Policy in accordance with the rates and rules then in effect.

**EXAMINATION OF YOUR BOOKS AND RECORDS**
We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

CAS2007 0220                                                                                                              Page 1 of 3

**TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

**SERVICE OF SUIT**

In the event of the failure of the Company to pay any amount claimed to be due under this Policy, the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada.   All matters arising under this Policy shall be determined in accordance with the choice of law rules of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Service of process in any such suit may be made upon the President and Chief Executive Officer of the Company or his designee at the address shown on the Declarations of this Policy.  In any suit instituted upon this contract and against the President and Chief Executive Officer of the Company or his designee, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.  The President and Chief Executive Officer of the Company or his designee are authorized and directed to accept service of process.

Pursuant to any statute of any state, territory or district of the United States of America, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary under this Policy arising out of this contract of insurance.  The Company designates the above-named as the person to whom said officer is authorized to mail such process or a true copy of such process.

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**—the Transfer Of Rights Of Recovery Against Others To Us Condition of the Policy is deleted and replaced with the following:

If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us. That person or organization must do nothing after loss to impair them.  At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**LEGAL ACTION AGAINST US**—the Legal Action Against Us Condition of the Policy is deleted and replaced with the following:

No one may bring a legal action against us under this Policy unless there has been full compliance with all of the terms of this Policy.  No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless it is commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the state within which this Policy  is issued, such limitation is invalid then any such claims shall be void unless such action, suit or proceeding is commenced within the shortest limit of time permitted by the laws of such state.  We will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance.

**BINDING ARBITRATION**

All disputes under this Policy shall be subject to binding arbitration as follows:

a.  All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a Named Insured, an insured, an additional insured, or entitled to coverage under the Supplementary Payments

provisions of this Policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association.  The arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator.  The American Arbitration Association shall decide any disputes concerning the selection of the Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association.  Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

b.  All disputes regarding payment(s) owed under this Policy for any deductible or premium, including but not limited to any audit premium, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with the AAA Expedited Procedures. This arbitration shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

Each party will provide relevant documents in support of its position. In order to eliminate undue burden and expense, there shall be no other discovery allowed. The arbitration will be based solely on the documents submitted by the parties and there shall be no in-person or oral hearing. The disputes shall be decided by a single arbitrator. The arbitrator's decision shall be accompanied by a reasoned opinion and shall be binding upon all parties.  Any judgment or award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such judgment or award.  Each party shall bear its own costs and expenses and an equal share of the arbitrator's fee and any administrative fees associated with the arbitration.

Except as may be required by law, neither a party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BASIS OF PREMIUM

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

The basis used for determining the premium charge for each classification is indicated in the Classification and Premium section of the Declarations. The definition of each basis of premium is as follows:

**A. Acres**

The total amount of acreage at the insured premises.

The rates apply per acre.

**B. Admissions**

The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per 1,000 admissions.

**C. Area**

The total number of square feet of floor space at the insured premises, computed as follows:

1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   a. Courts and mezzanine types of floor openings.
   b. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

2. For tenants, determine the area they occupy in the same manner as for entire buildings.

3. The rates apply per 1,000 square feet of area.

**D. Each**

This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the classification footnotes, such as "per person".

**E. Flat Charge**

A fixed non-variable amount.

ADF4002 1120

**F. Gross Domestic Sales**

1. Definition

The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   a. All goods or products, sold or distributed in the United States;
   b. Operations performing during the policy period in the United States;
   c. Rentals within the United States; and
   d. Dues or fees arising out of operations within the United States.

2. Inclusions

The following items shall not be deducted from gross domestic sales:
   a. Freight allowance to customers;
   b. Total sales of consigned goods and warehouse receipts;
   c. Discounts of any kind, unless otherwise noted in Paragraph 3. below;
   d. Bad debts;
   e. Repossession of items sold on installments (amount actually collected);
   f. To the extent that coverage is provided by this policy, foreign sales;
   g. Sales attributable to business activities with other companies or individuals that have provided evidence of their own insurance; and
   h. Rebates paid.

3. Exclusions

The following items shall be deducted from gross domestic sales:
   a. Sales or excise taxes which are collected and submitted to a governmental division;
   b. Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
   c. Finance charges for items sold on installments;
   d. Freight charges on sales if freight is charged as a separate item on customers invoice;
   e. Royalty income from patent rights or copyrights which are not product sales;
   f. Rental receipts for products liability coverage only;
   g. Intercompany sales between companies included on this policy as Named insureds;
   h. Sales derived from work performed under a "wrap up" insurance program or Owner Controlled or Contractor Controlled Insurance Programs (OCIP or CCIP); and
   i. Rebates received.

4. Application

The rates apply per $1,000 of Gross Domestic Sales.

**G. Gross Sales**

1. Definition

The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   a. All goods or products, sold or distributed;
   b. Operations performed during the policy period;
   c. Rentals; and
   d. Dues or fees.

2. Inclusions

The following items shall not be deducted from gross sales:

a. Freight allowance to customers;

b. Total sales of consigned goods and warehouse receipts;

c. Discounts of any kind, unless otherwise noted in Paragraph 3, below;

d. Bad debts;

e. Repossession of items sold on installments (amount actually collected);

f. To the extent that coverage is provided by this policy, foreign sales;

g. Sales attributable to business activities with other companies or individuals that have provided evidence of their own insurance; and

h. Rebates paid.

3. Exclusions

The following items shall be deducted from gross sales:

a. Sales or excise taxes which are collected and submitted to a governmental division;

b. Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;

c. Finance charges for items sold on installments;

d. Freight charges on sales if freight is charged as a separate item on customers invoice;

e. Royalty income from patent rights or copyrights which are not product sales;

f. Rental receipts for products liability coverage only;

g. Intercompany sales between companies included on this policy as Named insureds;

h. Sales derived from work performed under a "wrap up" insurance program or Owner Controlled or Contractor Controlled Insurance Program (OCIP or CCIP); and

i. Rebates received.

4. Application

The rates apply per $1,000 of Gross Sales.

**H. Payroll**

1. Definition

a. Payroll means remuneration.

b. Remuneration means money or substitutes for money.

2. Inclusions

Payroll includes the following items:

a. Commissions;

b. Bonuses;

c. Extra pay for overtime work, except as provided in Paragraph H.4.;

d. Pay for holidays, vacations or periods of sickness;

e. Payment by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;

f. Payment to employees on any basis other than time worked, such as piecework, profit sharing or incentive plans;

g. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;

h. The rental value of an apartment or a house provided for an employee based on comparable accommodations;

i. The value of lodging, other than an apartment or house, received by employees as part of their pay, to the extent shown in the insured's records;

    j.   The value of meals received by employees as part of their pay to the extent shown in the insured's records;

    k.   The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;

    l.   The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment;

    m.   The payroll of executive officers of a corporation and individual insureds and co-partners. For the purposes of payroll determination, managers of limited liability companies shall be considered executive officers and members of limited liability companies shall be considered co-partners;

        1)   The executive officers of a corporation are those persons holding any of the officer positions created by the named insured's charter, constitution or by-laws or any other similar governing document.

        2)   The payroll of all executive officers of a corporation and individual insureds or co-partners engaged principally in clerical operations or as salespersons, and officers and co-partners who are inactive for the entire policy period, shall not be included for premium purposes.

        3)   For part-time or seasonal businesses the payroll amounts may be reduced by 2 percent for each full calendar week in excess of twelve during which the risk performs no operations.

    n.   The payroll of leased workers furnished to the named insured by a labor leasing firm.

        1)   Premium on such payroll shall be based on the classifications and rates that would have applied if the leased workers had been the direct employees of the named insured.  If payroll is unavailable, use 100% of the total cost of the contract for leased workers as the payroll of leased workers. The premium shall be charged on that amount as payroll.

        2)   If investigation of a specific employee leasing contract discloses that a definite amount of the contract price represents payroll, such amount shall be considered payroll for premium computation purposes.

    o.   Fees paid to employment agencies for temporary personnel provided to the insured.

3.   Exclusions

    a.   Tips and other gratuities received by employees;

    b.   Payments by an employer to group insurance or group pension plans for employees, other than payments covered by Paragraph H.2.e.;

    c.   The value of special rewards for individual invention or discovery;

    d.   Dismissal or severance payments except for time worked or accrued vacation;

    e.   The payroll of clerical office employees;

        1)   Clerical office employees are those employees who work in an area which is physically separated by walls, floors or partitions from all other work areas of the insured and whose duties are strictly limited to keeping the insured's books or records or conducting correspondence, including any other employees engaged in clerical work in the same area.

    f.   The payroll of salespersons, collectors or messengers who work principally away from the insured's premises;

        1)   Salespersons, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer.  This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

    g.   The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles;

    h.   The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity; and

      i.    The payroll of draftsmen if their duties are limited to office work only and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazards of the business. The payroll of these draftsmen shall be assigned to the classification "Draftsmen" - Code 91805.

4. Overtime

    a.    Definition

        Overtime means those hours worked for which there is an increase in the rate of pay:

        1)    For work in any day or in any week in excess of the number of hours normally worked, or

        2)    For hours worked in excess of 8 hours in any day or 40 hours in any week, or

        3)    For work on Saturdays, Sundays or Holidays.

        In the case of guaranteed wage agreements, overtime means only those hours worked in excess of the number specified in such agreement.

    b.    Exclusion of Overtime Payroll

        The extra pay for overtime shall be excluded from the payroll on which premium is computed as indicated in 1) or 2), provided the insured's books and records are maintained to show overtime pay separately by employee and in summary by classification.

        1)    If the records show separately the extra pay earned for overtime, the entire extra pay shall be excluded.

        2)    If the records show the total pay earned for overtime (regular pay plus overtime pay) in one combined amount, 1/3 of this total pay shall be excluded. If double time is paid for overtime and the total pay for such overtime is recorded separately, 1/2 of the total pay for double time shall be excluded.

        Exclusion of overtime pay does not apply to payroll assigned to the "Stevedoring" classifications.

5. Application

    The rates apply per $1,000 of payroll.

## I.  Total Cost

The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and

2. All fees, bonuses or commissions made, paid or due.

The rates apply per $1,000 of Total Cost.

## J.  Units

A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

## K.  Gallons

The total number of gallons of a liquid, plasma, gas or compressed gas sold or delivered.

The rates apply per 1,000 gallons.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL POLICY PROVISIONS - PREMIUM

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | | Return Premium: $0 |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

### SCHEDULE

| A. | **Minimum and Deposit Premium:** | 100% |
|---|---|---|
| B. | **Percentage of Premium retained (Minimum Earned Premium):** | 25% |

This endorsement sets forth the **Minimum Earned Premium** and **Minimum and Deposit Premium** provisions for this Policy, calculated as follows:

1. The **Minimum and Deposit Premium** for this Policy is shown in item **A.** of the Schedule above and is a percentage of the TOTAL PREMIUM (DEPOSIT PREMIUM) shown on the Declarations page, plus any premium adjustments by endorsement and any additional premium calculated as a result of any premium audit, if applicable.

2. Audits that indicate a return premium will not reduce the **Minimum and Deposit Premium** described in Paragraph 1. above.

3. If you cancel this Policy and:

   a. The Policy **is not** subject to audit, the return premium will be 90% of the unearned premium. However, in no event will we retain less than the **Minimum Earned Premium**, calculated by multiplying the percentage shown in item **B.** of the Schedule above by the **Minimum and Deposit Premium** described in Paragraph 1. above.

   b. The Policy **is** subject to audit, the earned premium will be determined by final audit. However, in no event will such earned premium be less than the **Minimum Earned Premium**, calculated by multiplying the percentage shown in item **B.** of the Schedule above by the **Minimum and Deposit Premium** described in Paragraph 1. above.

4. If we cancel the Policy for any reason other than nonpayment of premium, you will be returned the full amount of unearned premium, as determined by premium audit and without any **Minimum Earned Premium** retention as described in **B.** of the Schedule above.

   Provided that, if any Audit Noncompliance Charge has been imposed on this Policy and any additional premium computed as a result is owed, unearned premium will be calculated after deducting such charge due to us.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CAS4018 1121                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT - CONDITIONS - PREMIUM AUDIT

| *Attached To and Forming Part of Policy* <br> 0100176944-0 | *Effective Date of Endorsement* <br> 01/26/2022 12:01AM at the Named Insured <br> address shown on the Declarations | *Named Insured* <br> Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* <br> $0 | | *Return Premium:* <br> $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

The **Premium Audit** provision shown in the **CONDITIONS** Section of this Policy is deleted and replaced with the following:

**Premium Audit**

a.   We will compute all premiums for this Policy in accordance with our rules and rates.

b.   Premium for this Policy, shown on the Declarations page, is a deposit premium only and will be credited toward the final earned premium calculated by premium audit and due at the end of the policy period.

(1)   At the close of each audit period, or any part thereof, terminating at the end of the policy period or upon cancellation, if applicable, we may conduct an audit of your books and records to determine the actual earned premium for the policy period.  Such premium amount will be calculated in accordance with the Basis of Premium shown on the Declarations page of this Policy.

(2)   If the total earned premium calculated for that period is greater than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, the additional premium owed based upon such premium audit calculation is due upon notice to the first Named Insured.

(3)   If the total earned premium calculated for that period is less than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, we will retain no less than the **Minimum and Deposit Premium**, as described in Paragraph 1. of the Additional Policy Provision - Premium endorsement attached to this Policy,

c.   The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.  Failure to provide such records upon request will be deemed a breach of Policy Conditions, which may subject this Policy, as well as any other policies issued to you, to cancellation.  We have the right, but not the obligation to conduct an  audit of records needed for premium computation after the expiration of this Policy.  Audits may be conducted physically, remotely or by any other means we may choose.

d.   We will make no less than two attempts to contact you directly to conduct an audit and at least one attempt to contact your agent or broker of record for assistance should direct contact efforts fail.  These attempts will occur over a span of no less than two calendar weeks.  Any refusal or failure by you: a) to maintain or provide needed records or b) to allow us to conduct an audit of needed records will result in:

(1)   Our developing and calculating a final audit premium based on information available to us and without your cooperation and assistance; or

(2)   The assessment of an Audit Noncompliance Charge, if applicable to this Policy.

CAS4029 0721                                                                                                                                          Page 1 of 2

If final premium audits calculated without your cooperation and assistance result in additional premium owed to us, you are obligated and agree to pay such additional premium.

You may dispute such final premium audit results or the assessment of an Audit Noncompliance Charge, but only if you provide notice and explanation of your dispute to us, in writing, and your written notice includes verifiable documentation that supports your dispute and allows for premium computation.

Refusal or failure to provide written notice of your dispute along with verifiable documentation supporting your dispute and allowing for premium computation will indicate to us your agreement with the audit results.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ABSOLUTE POLLUTION AND POLLUTION RELATED LIABILITY

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | | *Return Premium:*<br>$0 |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this policy. If the policy already includes a pollution exclusion or a pollution related exclusion, such exclusion(s) is (are) deleted and replaced with the following:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" or any other injury, damage, or legal liability of any kind, arising directly or indirectly out of, related to, including, or in any way involving the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape of, placement of, or presence of "pollutants", however caused, including but not limited to:
>
> a. Any loss, cost, expense, fines or penalty arising out of any (i) request, demand, order, governmental authority or directive, or, that of any private party or citizen action, that any insured, or others, test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of "pollutants" or (ii) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape of or placement of, or presence of "pollutants" into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.
>
> b. The devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense.
>
> This exclusion applies regardless of fault or intent, regardless of the particular cause of action or theory of liability, regardless of whether a "pollutant" is the initial precipitating cause or is in any way a cause, in the chain of events, and regardless of whether any other actual or alleged cause other than a "pollutant" contributed concurrently, proximately, or in any other sequence to the "bodily injury", "property damage", "personal and advertising injury", or any other injury, damage, or legal liability.

The following definition is added to the policy. If the policy already includes a definition of "pollutants" such definition is deleted and replaced with the following:

> "Pollutants" means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF3003 0519                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


# EXCLUSION - NUCLEAR, BIOLOGICAL OR CHEMICAL MATERIALS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

This insurance does not apply to any loss, injury, claim or damage arising directly or indirectly out of or relating to any activity by an individual acting alone, or individuals acting as part of a group, that involves any violent act, including the threat of any activity or preparation for any activity that involves the use, release, dispersal, discharge, escape or application of:

    a.   Nuclear materials, or directly results in nuclear reaction or radiation or radioactive contamination; or
    b.   Pathogenic or poisonous biological or chemical materials.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF3010 0110

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | | *Return Premium:*<br>$0 |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**A.** The following exclusions are added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**TERRORISM PUNITIVE DAMAGES**

Damages arising directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "personal injury", "injury" or "environmental damage" as may be defined in any applicable Policy.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - MEDICAL PAYMENTS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**SECTION I – COVERAGES, COVERAGE C – MEDICAL PAYMENTS** and all references to it are deleted in their entirety and not replaced.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - NEW ENTITIES (COMMERCIAL GENERAL LIABILITY)

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**SECTION II – WHO IS AN INSURED**, Paragraph **3.** is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. Exclusions**, paragraph **g.** is deleted and replaced by the following:

**g.    Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading" and the handling and placing of persons, by an insured, into, onto or from an "auto".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

**SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, Other Insurance,** paragraph **b. Excess Insurance**, subparagraph reading as follows, is deleted from this policy:

"If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability."

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDED EXCLUSION - EMPLOYER'S LIABILITY

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | | Return Premium: $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

The **Employer's Liability** exclusion in Paragraph **2. Exclusions** of the **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** coverage, is deleted and replaced by the following:

This insurance does not apply to:

**Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by any insured; or

    **(b)** Performing duties related to the conduct of any insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether an insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury and to liability assumed under an "insured contract".

The word "employee" as used in this exclusion includes any member, associate, "leased worker", contract worker, casual worker, "temporary worker" or any persons loaned to or volunteering services to you.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL POLICY EXCLUSIONS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE**

The following exclusions are added to this Policy:

**LEAD, ASBESTOS, SILICA, ERIONITE EXCLUSION**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" or other injury or damage arising directly or indirectly out of, related to, or, in any way involving the manufacture, sale, lease, distribution, transportation, storage, handling, installation, repair, removal, clean-up, testing, inspection, degradation, detoxifying or neutralizing, disposal, or other use of, ingestion, inhalation, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead, asbestos, silica or erionite in any form including but not limited to claims arising out of continuous, intermittent or repeated exposure to or ingestion, inhalation or absorption of lead, asbestos, silica or erionite in any form.

This exclusion applies:

1. To liability assumed in any contract or agreement;
2. To any obligation to pay or indemnify any person, entity, organization or governmental agency;
3. To any supervision, instructions, recommendations, requests, warnings, representations or advice given or which should have been given regarding the existence or control of lead, asbestos, silica or erionite; or
4. To any costs, expenses or damages arising out of any remedial investigation or feasibility studies or medical monitoring.

**PRIOR INJURY OR DAMAGE EXCLUSION**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" which begins or takes place before the inception date of this Policy or before the retroactive date of this Policy if claims-made coverage applies, regardless of whether or not such "bodily injury", "property damage" or "personal and advertising injury" is known to any insured. This exclusion shall apply even though the nature and extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury" or "property damage", or, the offense causing such "personal and advertising injury" may be or may involve a continuous or repeated exposure to substantially the same general harm or condition.

If you are a contractor, builder or developer the following also applies:

All "property damage" to units of or within a single project or development and arising from the same general type of harm or condition, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such damage may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm or condition which also

CAS3043 0621                                                                                    Page 1 of 3

continues or takes place (in the case of repeated exposure to the substantially the same general harm or condition) during the policy period of this Policy.

**DISCRIMINATION EXCLUSION**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" or other injury or damage arising directly or indirectly out of, related to, or, in any way involving discrimination of any kind, whether actual or alleged, nor to any expenses or obligation to share damages with or repay another who must pay damages from discrimination.

**EMPLOYMENT PRACTICES EXCLUSION**

This insurance does not apply to liability for employment-related practices, regardless of allegations, nor to any expenses nor to any obligation to share damages with or repay anyone else who must pay damages from same including but not limited to:

1. Refusal to employ or termination of employment;
2. Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment related practices, policies, acts or omissions;
3. Consequential "bodily injury" or "personal and advertising injury" as a result of 1. or 2. above.

**CLASSIFICATION LIMITATION EXCLUSION**

This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this Policy or in an endorsement to this Policy.  If any operation(s) are not described, they are not covered.

**DUTY TO DEFEND EXCLUSION**

Where there is no coverage under this Policy, there is no duty to defend.

**PROFESSIONAL LIABILITY EXCLUSION**

This insurance does not apply to professional liability, malpractice, errors, or omissions or acts of any type including rendering or failure to render any type of professional service nor to any expenses or any obligation to share damages with or repay anyone else who must pay damages from same, unless such professional liability coverage is specifically endorsed onto this Policy.

**FIDUCIARY EXCLUSION**

This insurance does not apply to any claim or "suit" arising directly or indirectly out of, related to, or, in any way involving:

1. Coercion, conversion or misappropriation of the funds or property of others;
2. Dishonest, fraudulent, criminal or malicious acts or omissions of the insured, or any partner or employee or any person for whom you are legally responsible; or
3. Activities or operations performed in the capacity of a fiduciary.

**WAR EXCLUSION**—the War Exclusion in the Policy is deleted and replaced with the following:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" or other injury or damage arising directly or indirectly out of, related to, or, in any way involving:

1. Hostile or warlike action in time of peace or war, including any action in hindering, combating, or defending against an actual impending or expected attack by:

   a. Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces;
   b. Military or naval or air forces, or

c.  An agent of a. or b. above, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion, or biological, chemical or radiological discharge shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.

2.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an event.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ALL CONSTRUCTION

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving any construction, demolition, development, reconstruction, rebuilding, restoration, renovation, remodeling, repair, upgrading, improvement, or refurbishing of any building or structure of any description.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CAS3056 1118                                                                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INTELLECTUAL PROPERTY

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | *Return Premium:*<br>$0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**SECTION I – COVERAGES**, **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions**, Exclusion **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret** is deleted and replaced with the following:

This insurance does not apply to any claim or "suit" arising out of any:

**(1)** Actual or alleged infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade dress, trade secret or other intellectual property rights;

**(2)** Actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition; or

**(3)** Products or goods manufactured, sold, handled or distributed or work completed by the insured or others operating under the direction or control of the insured in violation of any law, statute or ordinance of any federal, state or municipal government, or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NAMED INSURED VS. NAMED INSURED

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury" brought by one Named Insured against any other Named Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CAS3098 1120                                                                                             Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSIONS - EVICTION AND FAILURE TO MAINTAIN

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**A.** The following exclusions are added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving:

1. Violation of any law, local order or directive involving any duty to:
   a. Maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition; or
   b. Restore any room, dwelling or premises to a safe, sanitary, healthy, habitable or tenantable condition.

2. Any failure to respond to or comply with any federal, state, municipal or local order or directive to correct conditions at or near any room, dwelling or premises in violation of any federal, state, municipal or local statute, ordinance, rule, order or regulation.

3. Breach of any lease, rental agreement, contract, warranty or covenant, whether written or oral, involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition.

4. Violation of:
   a. Any Housing and Urban Development laws, ordinances or statutes;
   b. Any rent stabilization laws or ordinances;
   c. Any federal, state or local government subsidized program rules or regulations; or
   d. Any administrative rules or regulations pertaining to a. through c. above, including but not limited to those promulgated by local authorities.

5. Violation of:
   a. The California Civil Code Section 1941-1941.1 inclusive;
   b. The California Civil Code Section 1942.4 inclusive;
   c. The California Health and Safety Code Section 17920-17928 inclusive;
   d. The California Mobile Home Residency Law (California Civil Code Sections 798 through 799.5 inclusive);
   e. The California Mobile Home Parks Act (California Health & Safety Code Sections 18200 through 18700, inclusive); or
   f. Any administrative rules or regulations pertaining to a. through e. above, including but not limited to those promulgated by local authorities.

6. The wrongful eviction from, wrongful entry into, or invasion of private right of occupancy of a room, dwelling or premises, either actual or constructive, arising in whole or in part or in any way involving items 1. through 5. above.

**B.** The exclusions set forth in this endorsement shall apply:

   a. Whether the insured may be liable as an owner, landlord, tenant, operator or property manager or in any other capacity; and

CAS3103 0718                                                                                                   Page 1 of 2

b.  To any obligation to pay any attorneys' fees or costs, or share damages with, indemnify or repay someone else who must pay damages because of "bodily injury", "property damage" or "personal and advertising injury" arising out of items 1. through 6. above; and

c.  To the negligent hiring, employment, training, monitoring, supervision, or retention of any employee or agent of any insured with respect to items 1. through 6. above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE EXCLUSION - MOTORIZED VEHICLES

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving the operation, maintenance, use, entrustment to others, or "loading or unloading" of any motorized vehicle of any type.  Motorized vehicle includes, but is not limited to:

1. "Autos";

2. Motorized bicycles, electric bicycles;

3. All-Terrain Vehicles (ATVs), Utility Task Vehicles (UTVs);

4. Golf carts, club carts/cars;

5. "Mobile equipment"; and

6. Mopeds, motor scooters, electric scooters.

This exclusion applies to any claim or "suit" regardless of whether any motorized vehicle is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that involves any motorized vehicle.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDED EXCLUSION - RECORDING AND DISTRIBUTION  OF MATERIAL OR INFORMATION- GENERAL LIABILITY

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | | *Return Premium:*<br>$0 |

**This endorsement modifies insurance provided under the following:**
**COMMERCIAL GENERAL LIABILITY COVERAGE**

**A.**  The **Recording And Distribution Of Material Or Information In Violation Of Law** exclusion under Paragraph **2.** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced with the following:

"Bodily injury" or "property damage" arising directly or indirectly out of any actual or alleged:

**(1)**  Access to or disclosure of any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

**(2)**  Act or omission that violates or is alleged to violate:
   **a.**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
   **b.**  The CAN-SPAM Act of 2003, including any amendment of or additional to such law;
   **c.**  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
   **d.**  Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

**B.**  The **Recording And Distribution Of Material Or Information In Violation Of Law** exclusion under Paragraph **2.** of **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** is deleted and replaced with the following:

 "Personal and advertising injury" arising directly or indirectly out of any actual or alleged:

**(1)**  Access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)**  Act or omission that violates or is alleged to violate:
   **a.**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
   **b.**  The CAN-SPAM Act of 2003, including any amendment of or additional to such law;
   **c.**  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.**  Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | | *Named Insured* Scrap Enterprises Inc |
|---|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" arising directly or indirectly out of any violation or alleged violation of:

    **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - FIRE OR FIRE-RELATED INJURY OR DAMAGE

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | Return Premium: $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving fire, smoke or any conceivable by-product of combustion.

This exclusion applies to any claim or "suit" regardless of whether fire, smoke or any by-product of combustion is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any fire, smoke or any conceivable by-product of combustion.

This exclusion does not apply to "property damage" to any one premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You, as described in Section **III** – Limits Of Insurance.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - PATHOGEN AND RELATED HAZARDS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILTY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving the inhalation of, absorption of, ingestion of, contact with, exposure to, existence of, or presence of any form of "pathogen and related hazards".

This exclusion applies, but is not limited to the following:

a. Providing or failing to provide any supervision, instructions, recommendations, warnings, or advice related to any actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any form of "pathogen and related hazards";

b. Failure to provide an environment safe from "pathogen and related hazards" or the actual, alleged or threatened transmission to others;

c. The prevention or suppression, or failure to prevent or suppress "pathogen and related hazards" or the actual, alleged, or threatened transmission to others;

d. The reporting or failure to report to the proper authorities;

e. The negligent hiring, employment, training, supervision, or retention of any insured, "employee", agent or other person with respect to a. through d. above; or

f. Any loss, cost or expense arising out of, related to, or in any way involving any claim, "suit", request, or demand that any insured:

    (1) Assess the presence, absence, amount, or effects of any "pathogen and related hazards"; or
    (2) Identify, sample, test, monitor, clean up, remove, dispose of, or neutralize the effects of any "pathogen and related hazards" in any building, material, animal, or product, including but not limited to "your product"; or
    (3) Respond to any "pathogen and related hazards" in any manner other than as described in (1) or (2) above.

This exclusion applies  to any  claim or "suit" regardless of whether any "pathogen and related hazards" is the initial precipitating cause or is in any way a cause of injury or damage and regardless of whether any other actual or alleged cause, event, material or product contributed concurrently, proximately, or in any sequence to such injury or damage, including whether any actual or alleged injury or damage arises out of a chain of events that includes "pathogen and related hazards".

As used in this exclusion, "pathogen and related hazards" includes, without limitation:

a. Fungus, including but not limited to any type of mold or mildew;

b. Any protist, including but not limited to algae and slime mold;

c. Any chemical matter, or compound produced or released by a fungus or protist, including but not limited to any mycotoxin, toxin, spore, scent, fragment, metabolites, or other by-product that is produced by a. or b. above;

d.    Any pathogen, including but not limited to virus, bacterium, prion, or protozoa or other microorganism;

e.    Any sexually transmitted disease, including but not limited to Acquired Immunodeficiency Syndrome or Human Immunodeficiency Virus, or exposure to another having the same, or to substances or materials contaminated with the same, or fear of contracting Acquired Immunodeficiency Syndrome, Human Immunodeficiency Virus, or any other communicable disease; or;

f.    Any other infectious or contagious disease transmissible by direct contact with an affected individual or the individual's discharges or by indirect means.

Solely regarding **Coverage A – Bodily Injury and Property Damage Liability**, this exclusion does not apply to fungi or bacteria on, or contained in, a good or product intended for bodily consumption.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE EXCLUSION - INJURY TO INDEPENDENT CONTRACTORS OR SUBCONTRACTORS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or "suit" for "bodily injury" or "personal and advertising injury" sustained by:

**(1)** Any independent contractor or subcontractor; or
**(2)** Any employee, "leased worker", "temporary worker" or volunteer help of any individual or entity described in **(1)** above; or
**(3)** The spouse, child, parent, brother, sister, or other family member of any individual or entity described in **(1)** or **(2)** above, as a consequence of such individual or entity's injury.

This exclusion applies regardless of who retained, hired, engaged or selected the individual or entity described in **(1)** above. This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CG 21 04 11 85                    Copyright, Insurance Services Office, Inc., 1984                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - EXCLUDING PRODUCTS/COMPLETED OPERATIONS

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | | *Named Insured* Scrap Enterprises Inc |
|---|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

A.  **SECTION II - WHO IS AN INSURED** is amended to include any person or organization you are required to include as an Additional Insured on this Policy by written contract in effect during the policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage", but only for the vicarious liability imposed on the Additional Insured provided that such liability is caused by the sole negligent conduct of the Named Insured.

However:

1.  The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

2.  Will not be broader than that which you are required by the written contract to provide for such Additional Insured.

B.  The insurance provided to the Additional Insured under this endorsement is limited as follows:

1.  This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" included in the "products-completed operations hazard."

2.  Any insurance provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis unless a written contract specifically requires that this insurance apply on a primary or primary and noncontributory basis.

3.  Where there is no duty to defend the Named Insured, there is no duty to defend the Additional Insured. Where there is no duty to indemnify the Named Insured, there is no duty to indemnify the Additional Insured.

4.  This insurance does not apply to "bodily injury" or "property damage "arising out of the sole negligence of the Additional Insured or any employees of the Additional Insured.

C.   With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE**:

The most we will pay on behalf of the Additional Insured is the amount of insurance:

1.  Required by the written contract; or

2.  Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**D.** Duties of the Additional Insured in the event of "occurrence", claim or "suit":

1. The Additional Insured must promptly give notice of an "occurrence", a claim which is made or a "suit", to any other insurer which has insurance for a loss to which this insurance may apply.

2. The Additional Insured must promptly tender the defense of any claim made or "suit" to any other insurer which also issued insurance to the Additional Insured as a Named Insured or to which the Additional Insured may qualify as an Additional Insured for a loss to which this insurance may apply.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - MORTGAGEE, ASSIGNEE, OR RECEIVER

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

A.  **SECTION II - WHO IS AN INSURED** is amended to include any person or organization you are required by written contract to add as an Additional Insured on this Policy, but:

1.  Only if such written contract was executed prior to the "bodily injury" or "property damage" and is in effect at the time the "bodily injury" or "property damage" occurs; and

2.  Only with respect to such person or organization's vicarious liability for "bodily injury" or "property damage" as mortgagee, assignee, or receiver; and

3.  Solely for liability caused by the ownership, maintenance or use of the premises by you and for which such person or organization is mortgagee, assignee, or receiver.

However:

1.  The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

2.  Will not be broader than that which you are required by the written contract to provide for such Additional Insured.

B.  With respect to the insurance afforded to the Additional Insured, the following additional exclusion applies:

1.  This insurance does not apply to any structural alterations, new construction or demolition operations performed by or for the Additional Insured.

C.  With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE**:

The most we will pay on behalf of the Additional Insured is the amount of insurance:

1.  Required by the written contract; or

2.  Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

CAS5016 0420                                                                                    Page 1 of 2

**D.** Duties of the Additional Insured in the event of an "occurrence", claim or "suit":

1.  The Additional Insured must promptly give notice of an "occurrence" which may result in a claim, a claim which is made, or, a "suit" to any other insurer which has insurance for a loss to which this insurance may apply.

2.  The Additional Insured must promptly tender the defense of any claim made or "suit" to any other insurer which also issued insurance to the Additional Insured as a Named Insured or to which the Additional Insured may qualify as an Additional Insured for a loss to which this insurance may apply.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - MANAGERS OR LESSORS OF PREMISES

| Attached To and Forming Part of Policy<br>0100176944-0 | Effective Date of Endorsement<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>Scrap Enterprises Inc |
|---|---|---|
| Additional Premium:<br>$0 | Return Premium:<br>$0 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A.** **SECTION II - WHO IS AN INSURED** is amended to include any person or organization you are required by written contract to add as an Additional Insured on this Policy, but:

   **1.** Only if such written contract was executed prior to the "bodily injury" or "property damage" and is in effect at the time the "bodily injury" or "property damage" occurs; and

   **2.** Only with respect to such person or organization's vicarious liability for "bodily injury" or "property damage" as manager or lessor of that part of the premises leased to you; and

   **3.** Solely for liability caused by the ownership, maintenance or use of that part of the premises leased to you by such person or organization.

   However:

   **1.** The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

   **2.** Will not be broader than that which you are required by the written contract to provide for such Additional Insured.

**B.** With respect to the insurance afforded to the Additional Insured, the following additional exclusions apply:

   **1.** This insurance does not apply to:
      **a.** Any "occurrence" which takes place after you cease to be a tenant in that premises;
      **b.** Structural alterations, new construction or demolition operations performed by or on behalf of the Additional Insured; or
      **c.** Any "bodily injury", "property damage" or "personal and advertising injury" arising out of:
         **(1)** The sole negligence of the Additional Insured or any employees of the Additional Insured; or
         **(2)** Any obligation of the Additional Insured to indemnify another because of damages arising out of such injury or damage.

   **2.** Where there is no duty to defend the Named Insured, there is no duty to defend the Additional Insured. Where there is no duty to indemnify the Named Insured, there is no duty to indemnify the Additional Insured.

**C.** With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE**:

   The most we will pay on behalf of the Additional Insured is the amount of insurance:

   **1.** Required by the written contract; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**D.** Duties of the Additional Insured in the event of an "occurrence", offense, claim or "suit":

**1.** The Additional Insured must promptly give notice of an "occurrence", an offense which may result in a claim, a claim which is made, or, a "suit" to any other insurer which has insurance for a loss to which this insurance may apply.

**2.** The Additional Insured must promptly tender the defense of any claim made or "suit" to any other insurer which also issued insurance to the Additional Insured as a Named Insured or to which the Additional Insured may qualify as an Additional Insured for a loss to which this insurance may apply.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED- STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION PERMITS - BLANKET

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | | *Return Premium:*<br>$0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A.** **SECTION II - WHO IS AN INSURED** is amended to include as an Additional Insured, any state or governmental agency or subdivision or political subdivision that has issued a permit for your operations, when it is required as a condition of such permit that the state or governmental agency or subdivision or political subdivision be named as an Additional Insured on this Policy, but only with respect to vicarious liability imposed on the Additional Insured as a result of those operations performed by you or on your behalf for which the state or political subdivision has issued the permit.

However:

**1.** The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required, as a condition of the permit, to provide for such Additional Insured.

**B.** With respect to the insurance afforded to these Additional Insureds, the following additional exclusions apply:

This insurance does not apply to any:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality;

**2.** "Bodily injury" or "property damage" included within the "products-completed operations hazard";

**3.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the Additional Insured or employees of the Additional Insured; or

**4.** "Bodily injury", "property damage" or "personal and advertising injury" to any employee of the Named Insured or to any obligation of the Additional Insured to indemnify another because of damages arising out of such injury or damage.

**C.** A state or political subdivision's status as an Additional Insured under this endorsement ends when "your work" under such permit is completed.

**D.** With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE**:

The most we will pay on behalf of the Additional Insured is the amount of insurance:

**1.** Required as a condition of the permit; or

**2.** Available under the applicable limits of insurance;

whichever is less.

CAS5018 0420

This endorsement shall not increase the applicable limits of insurance.

**E.**   Duties of the Additional Insured in the event of "occurrence", offense, claim or "suit":

**1.**   The Additional Insured must promptly give notice of an "occurrence" an offense which may result in a claim, a claim which is made or a "suit", to any other insurer which has insurance for a loss to which this insurance may apply.

**2.**   The Additional Insured must promptly tender the defense of any claim made or "suit" to any other insurer which also issued insurance to the Additional Insured as a Named Insured or to which the Additional Insured A. may qualify as an Additional Insured for a loss to which this insurance may apply.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT - AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

| *Attached To and Forming Part of Policy*<br>0100176944-0 | *Effective Date of Endorsement*<br>01/26/2022 12:01AM at the Named Insured<br>address shown on the Declarations | *Named Insured*<br>Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:*<br>$0 | | *Return Premium:*<br>$0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement you have entered into with the additional insured; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CG 20 34 12 19                    © Insurance Services Office, Inc, 2018                    Page 1 of 1

## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the federal Terrorism Risk Insurance Act, as amended ("the Act"), the Company must make available insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.  This Policy includes such coverage for damages arising out of certified acts of terrorism and is limited by the terms, conditions, exclusions, limits, other provisions of the coverage quote or renewal application/questionnaire to which this offer is attached and by the Policy, any endorsements to the Policy and generally applicable rules of law.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM FOR WHICH THIS POLICY PROVIDES COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THE FORMULA, BEGINNING ON JANUARY 1, 2020,  THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.**

**NO PREMIUM IS CHARGED FOR THIS COVERAGE NOR IS ANY CHARGE MADE FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

*YOU SHOULD ALSO KNOW THAT THE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT, AS WELL AS INSURERS' LIABILITY FOR LOSSES, RESULTING FROM CERTIFIED "ACTS OF TERRORISM" WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.*

*COVERAGE FOR "INSURED LOSSES" AS DEFINED IN THE ACT IS SUBJECT TO THE COVERAGE TERMS, CONDITIONS, AMOUNTS AND LIMITS IN THIS POLICY APPLICABLE TO LOSSES ARISING FROM EVENTS OTHER THAN "ACTS OF TERRORISM".*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION
# ENDORSEMENT
# (BROAD FORM)

| Attached To and Forming Part of Policy 0100176944-0 | Effective Date of Endorsement 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | Named Insured Scrap Enterprises Inc |
|---|---|---|
| Additional Premium: $0 | | Return Premium: $0 |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL AUTOMOBILE COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MEDICAL PROFESSIONAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

IL 00 21 09 08                     © ISO Properties, Inc., 2007                     Page 1 of 2

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**SCHEDULE**

| SCHEDULE - PART I | |
|---|---|
| **Terrorism Premium (Certified Acts)** | $ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** | |

| **Additional information, if any, concerning the terrorism premium:** |
|---|
| |

**SCHEDULE - PART II**

| Federal Share of Terrorism Losses | 80% |
|---|---|
| (Refer to Paragraph B. in this endorsement.) | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

IL 09 85 12 20                   © Insurance Services Office, Inc., 2020                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SIGNATURE ENDORSEMENT

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | *Return Premium:* $0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

By signing and delivering this policy to you, we state that it is a valid contract when signed as below by our authorized representatives.

_____                    _____
Secretary                                          President

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF9004 0110                                                           Page 1 of 1

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice shall not be construed as part of your policy and no coverage is provided by this Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages your policy provides.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control administers and enforces sanctions policy, based on Presidential declarations of national emergency.   OFAC has identified and listed numerous Foreign Agents, Front Organizations, Terrorists, Terrorist organizations and Narcotics traffickers as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's web site—http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a "Specially Designated National and Blocked Person", as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments and no premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

ADF9009 0110                                                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PENNSYLVANIA CHANGES-CANCELLATION AND NON-RENEWAL

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2022 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $0 | | *Return Premium:* $0 |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**The CANCELLATION and NON-RENEWAL sections of the CONDITIONS section of this Policy are deleted and replaced with the following:**

**CANCELLATION**

a.  The first named insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

b.  **Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least 30 days before the effective date of cancellation.

c.  **Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1)  You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

(2)  You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

(3)  A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(4)  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(5)  Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(6)  Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

d.  We will mail or deliver our notice to the first named insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

e.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

f.  If this policy is cancelled, we will send the first named insured any premium refund due subject to the minimum earned premium provisions of the policy. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first named insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

g.  If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**NON-RENEWAL**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first named insured at least 60 days before the expiration date of the policy. Any notice of nonrenewal will be mailed or delivered to the first named insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**INCREASE OF PREMIUM**

If we increase your renewal premium, we will mail or deliver to the first named insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.  Any notice of renewal premium increase will be mailed or delivered to the first named insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# EXHIBIT B
## [Final Premium Audit Endorsement]

322843344v.2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUDIT ENDORSEMENT

| *Attached To and Forming Part of Policy* 0100176944-0 | *Effective Date of Endorsement* 01/26/2023 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Scrap Enterprises Inc |
|---|---|---|
| *Additional Premium:* $193,101 | *Return Premium:* | |

**Policy Change Number: 2**

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**SCHEDULE**

| Exposure Estimate: | Rate: | Deposit Premium: |
|---|---|---|
| $1,000,000 Gross Sales | $25.0000 | $25,000 |

| Audited Exposure: | Rate: | Audit Premium: |
|---|---|---|
| $8,724,050 Gross Sales | $25.0000 | $218,101 |

| Audit Premium less Deposit Premium equals Net Amount of Change in Premium (Additional Premium): | $193,101 |
|---|---|

At the close of each audit period, we compute the total earned premium for that period, shown above as **Audit Premium**. If the audit generates **Additional Premium**, the **Additional Premium** amount shown in this endorsement is due and payable upon notice to the first Named Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF9034 0521

# EXHIBIT C

## [Final Premium Audit Invoice]

322843344v.2

**Kinsale Insurance Company**

PO Box 734947
Dallas, TX 75373-4947
Phone 804.887.3348 Fax 804.482.2583

| | |
|---|---|
| **Invoice Date:** | **3/27/2023** |
| **Invoice #** | **0100176944-1** |
| **Due Date:** | **4/10/2023** |

Scrap Enterprises Inc dba Trion Equipment Sales
Attn: Joseph Kolmansperger
105 S Keyser Ave
Old Forge, PA  18518

| Description | | Amount |
|---|---|---|
| Final Audit | Kinsale Policy 0100176944-0 | $193,101.00 |
| | . | |
| **Total Due:** | | **$193,101.00** |

Make all checks payable to Kinsale Insurance Company.

Please direct any questions to Sean Eldridge, Premium Accounting Assistant

# EXHIBIT D
## [October 30, 2024 Correspondence]

322843344v.2



October 30, 2024

Scrap Enterprises Inc
Attn.: Joseph Kolmansperger
Via email: jkolmansperger@gmail.com

Re:  Insured:       Scrap Enterprises Inc
     Policy No.:    0100176944-0
     Policy Term:   1/26/2022-2023
     Policy Type:   General Liability

Dear Mr. Kolmansperger:

Enclosed please find a reminder invoice from Kinsale Insurance company for $193,101 representing the remaining amount owed for additional audit premium under the above captioned Policy.

Payment is now overdue.  Should we not receive payment within the next 5 business days, Kinsale seek to collect this payment by submitting this matter to binding arbitration as required by the Policy.

Thank you,

Scott Cribbs
Assistant Vice President – Underwriting Services
Kinsale Insurance Company

**Kinsale Insurance Company**
P. O. Box 734947 · Dallas, TX  75373-4947
Phone 804.289.1335
Scott.Cribbs@kinsaleins.com

# EXHIBIT E
## [December 16, 2024 Correspondence]

322843344v.2



December 16, 2024

Scrap Enterprises Inc
Via email: jkolmansperger@gmail.com

**INITIATION OF BINDING ARBITRATION**

RE:  Insured:      Scrap Enterprises Inc
     Policy No.:    0100176944-0
     Policy Term:  1/26/2022-2023
     Policy Type:  General Liability

Dear Mr. Kolmansperger :

As we have not received payment from you, this is to advise you that Kinsale Insurance Company has initiated binding arbitration on this matter pursuant to the Binding Arbitration provision contained in Form CAS2007 – COMMON CONDITIONS - CASUALTY contained in the above captioned Policy.

You will be receiving a notice from the American Arbitration Association (AAA) regarding the arbitration along with instructions on how to participate in this process, and an invoice for your portion of the fees and costs associated with the arbitration.  Any fees or costs advanced or paid on your behalf by the Company may be included in any judgment that may be awarded to Kinsale Insurance Company. Please be advised that any fees or costs Kinsale incurs in collecting on any award or judgment may be added to the total amount due.  Please note that your failure to participate in this arbitration will not hinder or delay the process.

Please contact AAA directly should you have any questions regarding the arbitration process. The notice you receive from AAA will provide contact information.

Should you wish to pay the amount due prior to arbitration, please contact me as soon as possible.  I can be reached by phone at 804-289-1335 or by e-mail at scott.cribbs@kinsaleins.com.

Thank you

Scott Cribbs
Assistant Vice President
Kinsale Insurance Company

6584345v.1
6607637v.1

# EXHIBIT F

## [Arbitration Award]

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

Kinsale Insurance Company, Claimant
v.
Scrap Enterprises Inc., Respondent

Case Number: 01-24-0009-1682

Commercial General Liability Policy
Policy Period January 26, 2022 to January 26, 2022
Policy Number 0100176944-0

**AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the parties, and dated January 26, 2025, and having been duly sworn and the oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by Claimant represented by Scott Cribbs, a non-attorney representative of Kinsale Insurance Company, and Respondent having failed to submit documents after due notice by mail in accordance with the Rules, hereby AWARD as follows: $193,101.00, representing the amount owed under the terms of the Commercial General Liability Insurance Policy issued by Claimant to Respondent, numbered 0100176944-0, for the policy period 01/26/2022 to 01/26/2023 ("the Policy").

The deposit premium paid by Respondent was clearly subject, under the applicable terms of the Policy, to audit by Claimant. The evidence submitted (including the Policy and the auditor's report), which was not challenged by Respondent despite ample notice and opportunity for it to do so, supports the full amount of Claimant's claim, i.e., $193,101.00..

The administrative fees and expenses of the American Arbitration Association totaling $2,900.00, and the compensation of the arbitrator totaling $2,610.00 shall be borne equally by the parties. Therefore, Respondent shall reimburse Claimant the sum of $2,755.00, representing that portion of said fees in excess of the apportioned costs previously incurred and paid by Claimant.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

_8/25/25_
Date

_William Black_
William Black

I do hereby affirm, upon my oath as Arbitrator, that I am the individual described in and who executed this instrument, which is my Award.

_8/25/25_
Date

_William Black_
William Black

# EXHIBIT B

## [Arbitration Award]

322843344v.2

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY, | CIVIL ACTION |
| Movant, | NO.: |
| v. | |
| SCRAP ENTERPRISES INC. | |
| Respondent. | |

**BRIEF IN SUPPORT OF KINSALE INSURANCE COMPANY'S
MOTION TO CONFIRM ARBITRATION AWARD**

Movant, Kinsale Insurance Company ("Movant"), by and through its attorneys, Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby submits the following brief in support of its Motion to Confirm Arbitration Award and, in support thereof, avers as follows:

**STATEMENT OF FACTS**

This matter arises out of an arbitration conducted by the American Arbitration Association ("AAA") between Movant and Scrap Enterprises Inc. ("Respondent"). Respondent obtained certain commercial general liability insurance coverage for the period of January 26, 2022 through January 26, 2023 pursuant to a certain Commercial General Liability Policy No. 0100176944-0 (the "Policy"). The Policy was audited following its natural termination, resulting in an increase in total earned premium and an earned premium balance, accounting for all payments previously made, of $193,101.00. Repeated demands were made upon Respondent to pay the earned premium balance, which demands were ignored. The terms of the Policy provide that all disputes regarding payment of post-audit premiums under the Policy are subject to binding arbitration. Movant subsequently initiated arbitration for this matter with AAA, having provided proper notice of their intent to Respondent.

322843344v.2

Under date of August 25, 2025, Movant recovered an Award of Arbitrator against Respondent for the principal amount of $193,101.00, together with $2,755.00 in combined administrative fees and expenses and compensation for the Arbitrator, for a total of $195,856.00 (the "Arbitration Award"). Movant is the owner and holder of the Arbitration Award, which remains in full force and effect. Demand has been made upon Respondent for payment, which demands have been refused. The Arbitration Award remains unpaid as of current date.

## LEGAL ARGUMENT

The Federal Arbitration Act provides that "within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." *9 U.S.C. §9*. Accordingly, the court has the obligation to confirm the movant's arbitration award into a judgment. *See Doctor's Assocs., Inc. v. Casarotto*, 116 S. Ct. 1652, 1657 (1996) (stating the purpose of the Federal Arbitration Act is to ensure that private agreements to arbitration are enforced); *Allied-Bruce Terminix Cos. v. Dobson*, 115 S. Ct. 834, 838 (1995) ("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate."); *Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984) (holding the Federal Arbitration Act preempts state law and state courts cannot apply state statutes that invalidate arbitration agreements).

The standard of review of an arbitrator's decision by the court is very narrow. The scope of review is limited and the court will not examine the validity of the decision except to the extent that the award exceeds the agreement of the parties. *See Burchell v. Marsh*, 58 U.S. 344, 349 (1854) (stating the appropriate scope of judicial review is whether the award is the honest decision of the arbitrator, made within the scope of the arbitrator's power, and that a court will not otherwise

322843344v.2

set aside an award for error, either in law or fact); *Coast Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1197-1198 (9th Cir. 1982).

Here, the arbitrator, having considered all documentation presented, and a hearing having been waived, determined that Respondent was liable to Movant for the Arbitration Award, being the full balance of unpaid insurance premiums owed by Respondent to Movant plus additional expenses, fees and compensation for AAA and its arbitrator.  Arbitration was authorized pursuant to the terms of the Policy.  Respondent was properly notified of the arbitration and refused to participate.  There are no grounds for vacating, modifying, or correcting an arbitration award enumerated in 9 U.S.C. §§10-11 which exist, and Respondent has not made any motion to vacate, modify or correct the Arbitration Award.

## <u>CONCLUSION</u>

For the foregoing reasons, Movant respectfully requests an order confirming an arbitration award into a judgment in the amount of $195,856.00 for Movant and against Respondent.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

Date: **02/05/2026** _____

**/s/Krishen R. Jalali**
_____
Benjamin Greenfield, Esquire
Krishen R. Jalali, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215-627-6900 (Main)
215-627-2665 (Fax)
Benjamin.Greenfield@wilsonelser.com
Krishen.Jalali@wilsonelser.com
*Attorneys for Movant,*
*Kinsale Insurance Company*

322843344v.2

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the date set forth below I sent a true and correct

copy of the foregoing Kinsale Insurance Company's Motion to Confirm Arbitration Award and

supporting Brief on the following parties in the manner set forth below:

Scrap Enterprises Inc.
c/o Walter Stocki
1 Country Club Pl.
South Abington Township, PA  18411
walter_sei@yahoo.com
*Via Private Process Server and Electronic Mail*


**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER, LLP**


**02/05/2026**                    **/s/Krishen R. Jalali**

Date:  _____          _____

                               Benjamin Greenfield, Esquire
                               Krishen R. Jalali, Esquire
                               *Attorneys for Movant,*
                               *Kinsale Insurance Company*

322843344v.2